**BRADLEY CONSTRUCTION, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 92–548C.

United States Court of Federal Claims.

March 7, 1994.

---

Lester C. Cannain, Albuquerque, NM, for plaintiff.

Jeffrey J. Bernstein, Commercial Litigation Branch, Civ.Div., U.S. Dept. of Justice, with whom were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, Washington, DC, for defendant.

## OPINION

MARGOLIS, Judge.

This contract case is before the court on the parties' cross-motions for summary judgment. Plaintiff, Bradley Construction, Inc., contracted with defendant, the United States, to renovate a medical facility. Plaintiff claims it is entitled to an equitable adjustment because defendant breached both its implied duty to disclose superior knowledge and its implied duty to cooperate during contract performance. Plaintiff first argues it may recover certain utility connection fees paid during contract performance because the United States failed to disclose, prior to bid submission, vital information regarding such costs. Defendant counters that anything it knew about the utility connection fees during bid solicitation was not vital to contract performance and could have been learned from other sources. Plaintiff also seeks an adjustment to the contract price for costs incurred as a result of a work stoppage. According to plaintiff, the United States breached its implied duty of cooperation by failing to prevent a work shutdown and failing to respond to the shutdown within a reasonable time. After hearing oral argument, and after carefully reviewing the record, the court denies plaintiff's motion for summary judgment and grants defendant's cross-motion for summary judgment.

## FACTS

Defendant, acting through the United States Department of Health and Human Services, solicited bids in March 1989 for construction and renovation work on the Fort Hall Comprehensive Health Care Facility ("facility") in Fort Hall, Idaho. The facility was located on land leased from the Shoshone–Bannock Tribes ("Tribes"). Consequently, the project contemplated connecting the facility to a sewer system maintained by the Tribes. The Invitation for Bids ("IFB") issued in connection with the project explained that the Tribal Employment Rights Office ("TERO")/Native Corporation of Fort Hall, the body with authority over the area in which the facility was located, might impose taxes, fees, wage rates, or other requirements on a successful bidder. The IFB did not identify any particular requirements, such as a sewer connection fee, TERO could institute. Rather, the IFB generally advised prospective bidders to contact the director of TERO, Ms. Tammy Trahant ("Trahant"), about specific requirements the Shoshone–Bannock Tribes might place on the renovation work.[1]

According to plaintiff, Bradley Construction, Inc. ("Bradley"), defendant knew during the bid solicitation process that TERO considered imposing a fee for sewer connections on the project and failed to disclose this information. Bradley alleges that, prior to contract award, TERO consulted the United States on the rate structure of a sewer connection fee. Bradley further claims it contacted Trahant before submitting its bid to inquire about TERO's policies, as the IFB directed, but Trahant did not mention that a sewer connection fee was being considered by the Tribes. Bradley's bid on the construction work did not include an allowance for sewer connection fees. On May 31, 1989, the United States awarded a $3,979,000 firm-fixed-price contract to plaintiff for the construction work at Fort Hall. James L. Thode ("Thode") served as the project manager for the contract.

The Shoshone–Bannock Tribes enacted a fee for sewer connections after Bradley began renovating the facility. Bradley received an invoice for $25,050 for sewer connection fees on November 17, 1989. On April 2, 1990, the Tribes reduced this assessment to $13,500. Bradley paid the utility fee on June 22, 1990. Bradley submitted an equitable adjustment claim in the amount of $15,931.95 for the utility fee and mark-ups for other allowable costs and profit on April 24, 1991.

The Shoshone–Bannock Tribes also passed a resolution on Thursday, January 4, 1990, ordering Bradley to stop work on the facility. Thode learned about the work shutdown on Friday, January 5, 1990, and officially responded to the situation on Monday, January 8, 1990, by letter. Thode also travelled to Fort Hall on January 9, 1990, to encourage leaders of the Shoshone–Bannock Tribes to rescind the resolution and allow Bradley to continue work on the facility. Bradley remobilized when the ban was lifted on January 11, 1990. On April 23, 1991, Bradley submitted a claim for $13,692.51 for costs incurred due to the work stoppage. The contracting officer, Anthony F. Mammoser, denied both

---

1. The IFB provided, in pertinent part,

   3. *TERO/NATIVE CORPORATION AND INDIAN PREFERENCE*

   (a) The work described in this solicitation will be performed in an area which is within the boundaries of the Tribal Employment Rights Office (TERO)/Native Corporation of *Fort Hall, Idaho.* The TERO/Native Corporation may impose certain requirements via taxes, fees, wage rates, employment policies or ordinances that may affect the contractor. The contractor is required to comply with all lawful tribal requirements in the performance of the work (reference FAR 52.236–7, Permits and Responsibilities). For information regarding TERO/Native Corporation requirements, bidders may contact the following offices:

   (1) *TERO DIRECTOR*

   a. Ms. Tammy Trahant
   P.O. Box 306
   Fort Hall, Idaho 83203
   (308) 238–3848

   b. Prior to submitting bids, it would be in the best interests of the bidders to contact the above concerning these items.
   —taxes
   —wage rates
   —Indian subcontracting
   —Indian employment
   —Indian training

       *    *    *    *    *    *

of Bradley's equitable adjustment claims on August 13, 1991. This lawsuit followed.

## DISCUSSION

The court will render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. RCFC 56. When reviewing a summary judgment motion, the court draws all justifiable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

■■■ The United States did not, as a matter of law, breach its implied duty to disclose superior knowledge when it failed to inform Bradley that the Tribes considered imposing a sewer connection fee. The duty to disclose superior knowledge arises when

(1) a contractor undertakes to perform without vital knowledge of a fact that affects performance costs or duration;

(2) the government was aware the contractor had no knowledge of *and had no reason to obtain such information;*

(3) any contract specification supplied misled the contractor, or did not put it on notice to inquire; and

(4) the government failed to provide the relevant information.

*Petrochem Services, Inc. v. United States,* 837 F.2d 1076, 1079 (Fed.Cir.1988) (citing cases) (emphasis added). A plaintiff must prove all four of these elements to establish the superior knowledge doctrine. Under the superior knowledge doctrine, the United States cannot "be liable for failing to provide information readily available to [a plaintiff] from other sources." *Id.* (citing *H.N. Bailey & Assoc. v. United States,* 196 Ct.Cl. 166, 449 F.2d 376, 382–83 (1971)).

■■■ The information about the sewer connection fee was vital and affected Bradley's

performance costs. Defendant urges the court to find that Bradley cannot meet the first element of the superior knowledge doctrine because the utility fee was *de minimis,* $13,500 on a $3,979,000 contract. The court rejects this argument. Defendant misreads the superior knowledge doctrine. Defendant interprets the term "vital" as requiring plaintiff to show that the information would have had a substantial impact on performance. This distorts the doctrine. The first element of the superior knowledge doctrine requires a contractor to show nothing more than defendant withheld essential information that actually affects performance costs. *See Petrochem,* 837 F.2d at 1079.

■■■ Nevertheless, the court finds that defendant did not breach a duty to disclose superior knowledge by withholding information about the potential sewer connection fee because Bradley could have acquired that information from Trahant.[2] The IFB specifically cautioned bidders to consider that "TERO may impose certain requirements via taxes, *fees,* wage rates, employment policies or ordinances that may affect the contractor." (emphasis added). The IFB also directed bidders to contact Trahant about TERO's requirements, and even facilitated such communication by providing Trahant's address and phone number. Clearly, Bradley had reason, means and opportunity to obtain information about a potential TERO sewer connection fee. This distinguishes the facts at issue here from *Helene Curtis Industries, Inc. v. United States,* 160 Ct.Cl. 437, 312 F.2d 774 (1963), the precedent on which plaintiff relies. In that case, the plaintiff proved the government breached its duty to disclose superior knowledge about the production process for a disinfectant, whose active ingredient was chlormelamine, a novel chemical at the time. *Id.* 312 F.2d at 775, 778. The court found the defendant liable under the superior knowledge doctrine because

2. Plaintiff argues that TERO is an agent of the United States and, therefore, defendant was the only source for information about the sewer connection fee prior to contract award. However, plaintiff has not offered, nor has the court discovered, any authority to support the assertion that a governing body of a Native American tribe, under the circumstances of this case, is an agent of the United States.

the Government had sponsored the research and knew much more about the [disinfectant] than the bidders did or could; it knew ... that the main ingredient, chlormelamine, was a recent invention, uncertain in reaction, and requiring extreme care in handling; it also knew that the more costly process of grinding would be necessary ... but that in their understandable ignorance the bidders would consider simple mixing adequate; and the urgency for the disinfectant was such that potential contractors could not expend much time learning about it before bidding.

*Id.* at 778. Bradley fails to allege, and indeed cannot prove, that defendant was the only readily accessible source for information about the sewer connection fee.

■ The court also finds that defendant did not breach its implied duty to cooperate during contract performance. Bradley argues it may recover costs resulting from the work shutdown because the United States hindered contract performance. Bradley asserts two reasons for its position. First, plaintiff maintains that defendant should have prevented the Tribes from stopping work on the facility by including a noninterference clause in its lease with them. Second, Bradley asserts the United States should have responded to the work stoppage faster. The essence of Bradley's theories is that defendant did not act reasonably given the facts and circumstances. *See Commerce International Co. v. United States,* 167 Ct.Cl. 529, 338 F.2d 81, 86 (1964). In order to prevail on its theories, Bradley must also show that defendant's unreasonable conduct caused the claimed injuries. *See* 48 C.F.R. 52.212–12(b) (Suspension of Work clause allows equitable adjustment for "any increase in the cost of performance ... *necessarily caused* by the unreasonable ... delay." (emphasis added)).

The United States acted reasonably, as a matter of law, when it contracted with Bradley to renovate the facility without first securing a noninterference clause from the Shoshone–Bannock Tribes.[3] Bradley does not present any facts or circumstances surrounding the formation of the lease which this court could find sufficiently compelling to make exclusion of a noninterference clause unreasonable. Plaintiff urges the court to adopt a rule which would effectively require the United States to include noninterference clauses whenever it leases property. Otherwise, the United States would always be liable for delay damages if it contracted to have work done on leased property and the lessor interfered. The court declines to so hold without any supporting legal authority.

Finally, the court finds that defendant's response to the work shutdown was reasonable and did not cause plaintiff to incur higher performance costs. The evidence before the court establishes that defendant did not know about the work stoppage before it was instituted. The Shoshone–Bannock Tribes passed the resolution on January 4, and halted work at the facility on January 5. The uncontradicted affidavit of Thode, the project manager, shows he did not learn of the shutdown until Friday, January 5, too late to take any preventive action. In other words, Bradley would have had to demobilize even if defendant responded faster.[4] Bradley admits that most of its costs associated with the shutdown were attributable to simply demobilizing and remobilizing, not the duration of the shutdown. Thus, defendant could not have prevented plaintiff's additional costs in this case. As a matter of law, the United States cannot be liable when it responds to a work stoppage within two business days and the primary costs of the shutdown are entirely beyond its control.

## CONCLUSION

The court denies plaintiff's motion for summary judgment and grants defendant's cross-motion for summary judgment because plaintiff can prove no set of facts under which the court could find a breach of either the implied duty to disclose superior knowledge or

---

3. According to Bradley, a noninterference clause would have required the Tribes to seek the approval of the United States before interfering with a contractor's performance.

4. The fact that the Shoshone–Bannock Tribes did not reverse their decision for three days following defendant's intervention further supports this conclusion.

the implied duty to cooperate during contract performance. The Clerk will dismiss the complaint. No costs.